# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRAP,<br><br>         Petitioner,<br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | Case Nos. 12cv1205 BEN<br>      10cr912 BEN<br><br>**ORDER GRANTING MOTION TO AMEND AND DENYING § 2255 MOTION** |

## INTRODUCTION

Petitioner Michael Trap's motion to accept his amended § 2255 motion is granted. Now before the Court is Trap's amended motion to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255. Trap seeks relief on several grounds, including claims of ineffective assistance of counsel. For the reasons given below, Trap's motion to collaterally attack his conviction and sentence is denied.

## BACKGROUND

Trap and his co-conspirators operated a fraudulent home loan modification operation. He was charged by Information and thereafter entered into a plea agreement and pled guilty to charges of violating 18 U.S.C. § 371 (conspiracy to commit wire fraud and money laundering) and 18 U.S.C. §§ 2 and 1957 (money

1  laundering and aiding and abetting).  The signed plea agreement contains Trap's
2  express waiver of his right to collaterally attack his guilty plea, conviction, or
3  sentence.  During the Rule 11 plea colloquy with the Magistrate Judge, Trap once
4  again waived his right to collaterally attack his plea, conviction, or sentence (so long
5  as he was sentenced within the Sentencing Guidelines range recommended by the
6  Government).  Later, he was sentenced to a sentence at the low end of the Guidelines
7  range recommended by the Government – and well below the sentence
8  recommended by the Probation Officer.

9        The District Court accepted the guilty plea.  At sentencing, the Probation
10 Officer calculated a Guidelines range of 57 to 71 months, and recommended a 57-
11 month sentence.  The Government, on the other hand, calculated a Guidelines range
12 of 30 to 37 months, and recommended a sentence of 30 months.  The Court imposed
13 a sentence of 30 months imprisonment and restitution in the amount of $460,249
14 jointly and severally with Trap's co-defendants.

15       At the conclusion of the sentencing hearing, after sentence was imposed, Trap,
16 for the third time, waived his right to collateral attack.  The Court asked Trap: "Do
17 you acknowledge, sir, that you have, in fact, waived your right to appeal and
18 collateral attack?"  Trap responded: "Yes."

19       Now, in spite of his waivers, Trap seeks to collaterally attack his conviction
20 and sentence on a number of grounds generally grouped as: (1) prosecutorial
21 misconduct claims; (2) ineffective assistance of counsel claims; (3) plain error
22 claims; and (4) evidence obtained by unconstitutional search and seizure claims.

23 **DISCUSSION**
24 **I.  Waiver**
25       Courts enforce plea agreements containing knowing and voluntary waivers of
26 statutory rights of appeal or collateral attack because such "waivers usefully
27 preserve the finality of judgments and sentences imposed pursuant to valid plea
28 agreements."  *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000); *United*

*States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) (quoting *United States v. Martinez*, 143 F.3d 1266, 1270-71 (9th Cir. 1998)) (courts enforce a waiver of appeal, as long as the waiver is "knowingly and voluntarily made" and "encompasses the defendant's right to appeal on the grounds claimed on appeal"). The Ninth Circuit recognizes that strong public policy considerations justify the enforcement of a defendant's waiver of his right to appeal or to collaterally attack a judgment. *United States v. Novarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990). Waivers play an important role in the plea bargaining process and help ensure finality. *Id.* at 322. The finality of judgments benefits both the government and the courts. *United States v. Littlefield*, 105 F.3d 527, 530 (9th Cir. 1997). In exchange for the defendant's guilty plea and waiver of rights to appeal and collaterally attack, the government and the courts need not spend resources on litigation after the sentencing. The defendant gets a lower sentencing recommendation and the court is more willing to agree to a lower sentence than would be the case absent the waivers.

A "defendant may waive the statutory right to file a § 2255 petition challenging the length of his sentence" where the defendant: (1) expressly waives the right of collateral attack; and (2) does so knowingly and voluntarily. *United States v. Leniear*, 574 F.3d 668, 672 n.3 (9th Cir. 2009); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).

Trap's plea agreement provides that he expressly "waives, to the full extent of the law, any right to appeal or collaterally attack the conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence greater than the high end of the guideline range . . . recommended by the Government pursuant to this plea agreement at the time of sentencing." During a thorough Rule 11 colloquy with Trap prior to accepting his guilty plea, the Magistrate Judge discussed this waiver provision and received confirmation from both Trap and his counsel that Trap understood. The present claims collaterally attacking his guilty

plea, conviction, and sentence in his § 2255 motion thus fall within the scope of the express language of the waiver provision. Accordingly, by his plea agreement and his representations in open court, Trap waived his right to collaterally attack his guilty plea, conviction, and sentence. Trap's knowing and voluntary waiver of his right to collaterally attack his conviction and sentence requires denial of his § 2255 motion. *Navarro-Botello*, 912 F.2d at 322 (finding a defendant could not ignore his part of the bargain in a plea agreement after obtaining concessions from the government).

Whether an exception exists – for a federal prisoner's collateral attack based upon an assertion that the plea bargain and its waiver was the product of ineffective assistance of counsel – has not been decided by either the United States Supreme Court or the Court of Appeals for the Ninth Circuit. *See Washington v. Lampert*, 422 F.3d 864, 869-73 (9th Cir. 2005) (holding that a state plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an ineffective assistance of counsel claim that challenges the voluntariness of the waiver, but noting that *the court has not decided the issue with respect to a federal defendant's waiver of a § 2255 collateral attack*); *see also Pruitt*, 32 F.3d at 433 ("We doubt that a plea agreement could waive a claim of ineffective assistance . . . . However, we need not face the issue here . . ."); *Abarca*, 985 F.3d at 1014 ("While we do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver..."); *United States v. De Jesus Gutierrez,* 434 Fed. App'x. 606, 606 n.1 (9th Cir. 2011) ("Because that issue is not presented here, we need not decide 'whether even an express waiver of all § 2255 rights could be enforced to preclude an ineffective assistance of counsel claim implicating the voluntariness of the waiver itself.'" (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1156 n.4)).

In Trap's case, the evidence demonstrates that he knowingly and voluntarily

waived his right to collaterally attack at the conclusion of the sentencing hearing. By the time of this third waiver, Trap had been made aware of the charges, described for the Magistrate Judge the factual basis for his guilty plea, heard the sentence actually imposed, had the opportunity to allocute, and had received assistance from his retained counsel throughout – assistance about which he had never complained to the Court and assistance from an attorney whom he had the right to replace at any time.  Trap waived his right to collaterally attack his conviction or sentence in this motion brought under § 2255.

**II.  Legal Standard for a Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255**

Even if the Ninth Circuit decides that an exception to a valid collateral attack waiver exists for certain ineffective assistance of counsel claims, the remaining claims of prosecutorial misconduct, plain error, and unconstitutional search and seizure would still be waived.  At the same time, the § 2255 claim that it was the ineffective assistance of his counsel that led to his plea agreement would still fail.

Trap brings the present motion to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255.  Section 2255 provides that a federal prisoner seeking relief from a custodial sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).  To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783-84 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks omitted).  In contrast, "errors of law which might require reversal of

a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981).

When a motion "presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (evidentiary hearing unnecessary if allegations when viewed against the record are palpably incredible or patently frivolous).

A defendant's past representations in open court "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Womack v. McDaniel*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting claim that plea was not knowingly, voluntarily or intelligently entered where belied by his statements in open court and the contents of his signed plea agreement).

### III.  Ineffective Assistance of Counsel

A § 2255 movant alleging ineffective assistance of counsel must show that: (1) "counsel's performance was deficient;" and (2) the "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hill v. Lockhart*, 474 U.S. 52, 55 (1985) (applying *Strickland* test to ineffective assistance claims arising out of the plea process). In the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance undercut the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty.

To succeed, the defendant must prove both prongs of the *Strickland* test: that counsel's assistance was not within the range of competence demanded of counsel in criminal cases and that the defendant suffered actual prejudice as a result. *Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004). To prove the prejudice prong, the

defendant must show, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

"Judicial scrutiny of counsel's performance must be highly deferential [because it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* For this reason, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* Finally, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In his amended § 2255 motion, Trap describes 23 instances of alleged ineffective assistance in paragraphs "a" through "x." Only instances of ineffective assistance going to the voluntariness or intelligence of the plea agreement and its waiver of the collateral attack right are possibly outside the scope of the waiver. Therefore, of the 23 alleged instances of ineffective assistance found in paragraphs "a" through "x" only those claims going to the voluntariness or intelligence of the plea agreement and its waiver of the collateral attack right are given further consideration here. Even where consideration is given, the allegations are not credible in light of the record.

In "a" Trap claims that on the day he signed the *cooperation* agreement his attorney was not present, spoke only over the phone, and did not discuss the document. The *cooperation* agreement was signed in October 2009. The plea agreement, on the other hand, was signed March 19, 2010. This claim proves neither ineffective assistance nor prejudice from the entry of the plea agreement.

In "b" Trap says that the plea agreement contained factual statements that were not true but that his attorney told him it did not matter. The one example he

offers is not persuasive. He asserts that "one statement identified me as an organizer of the scheme," but that was not true. At the same time he concedes that he was a founder and key figure of the company. Considering that the company had one product (loan modifications) and that Trap ran the day-to-day operations, it is hard to see how the statement was untrue. Added to that is the fact that the plea agreement contains a strike-out of a different factual statement, initialed by Trap in the margin. This suggests Trap read the plea agreement closely and did not disagree with the other statements. By this claim, Trap does not prove ineffective assistance or that Trap would have otherwise insisted on going to trial.

In "c" Trap claims his attorney failed to educate him about the crimes to which he was pleading guilty. Trap then asserts that had he been educated, he would not have pled guilty. Yet, he says "[o]f course, I would have pled to 'a felony,' as agreed." Continuing with conflicting assertions, Trap says "[a]lthough I believed I was innocent . . . it made sense to limit my exposure to one charge." In contrast to some of his other claims, Trap's assertions here are weighty. His evidence, however, is not. The singular support for this claim is his own after-the-fact asservations.

Contrary evidence is contained in the record. The plea agreement he signed says that he had, "fully discussed the facts of this case with defense counsel." It also says, "Defendant has committed each of the elements of the crime, and admits there is a factual basis for this guilty plea." *See* Plea Agreement at 2. Elsewhere in the same plea agreement it says that Trap had a full opportunity to discuss the case with his attorney "and has a clear understanding of the charges." It also says that he is pleading guilty "because in truth and in fact Defendant is guilty and for no other reason." *See* Plea Agreement at 7. Once again, at the end of the plea agreement, Trap certifies that he read the agreement and that he had discussed the terms with his attorney and fully understood its meaning and effect. *See* Plea Agreement at 12. The final sentence of the agreement states that Trap both consulted with his attorney

and that he was satisfied with his attorney's work. *Id.*

Before entering his guilty plea, the Magistrate Judge explained the elements of the three charges, to which Trap said he understood. His counsel told the Magistrate Judge that he had gone over the factual basis for the plea "in great detail." Trap then told the Magistrate Judge that he felt he understood the factual basis, he had no questions about the factual basis, he fully adopted the factual basis in the plea agreement, and that the facts were true. His counsel then told the court that he had been working on the factual basis "for the better part of a month," adding, "so, he's completely informed." The truth of these statements is bolstered by the fact that strike-outs and interlineations had been made to the factual basis in the plea agreement and initialed by Trap. Trap then told the Magistrate Judge that he was pleading guilty because he was guilty, not because he was threatened or promised anything else and that he was satisfied with the legal services provided by his attorney.

These were solemn, serious statements made by Trap in open court. They were made directly to a judge. They were made specifically about his own case. They were made and recorded at a time before Trap was sentenced and before he moved to vacate his sentence. They are at odds with the assertions he makes now. The Magistrate Judge determined that the plea was knowing and voluntary and recommended that the district court accept the plea. Trap did not object to that recommendation or move to withdraw the plea. The district court accepted the plea. At the later sentencing hearing, when Trap spoke in court he made no mention of actual innocence, or that his attorney failed to discuss with him the content or effect of the plea agreement. Once again, the record of the sentencing hearing was made and recorded at a time before Trap moved to vacate his sentence.

Trap offers no other evidence in support of his current protestations. No declarations from his counsel. No declarations from other counsel who reviewed his attorney's performance. No file notes or correspondence from his counsel that

suggest Trap was misled or deceived by his counsel. No notes from Trap to his counsel about his actual innocence or declarations from anyone who worked at his loan modification operation. No deposition testimony of his attorney's staff or others familiar with his representation. The only evidence in support of his § 2255 claim is his own, new, self-serving statement to this Court. And in considering the weight to be given to this new statement, one must consider that Trap has previously been convicted in this Court for violating 18 U.S.C. § 1623, for lying to a federal grand jury. What had he lied to the grand jury about? About a different fraudulent business he was involved in.

Trap's earlier representations on paper, in court, and his earlier silence refutes his present allegations. *See Watts v. United States*, 841 F.2d 275, 278 (9th Cir. 1988) (per curiam). Accordingly, when viewed against this record, Trap's allegations here are so palpably incredible that his claims are subject to dismissal. *See Leonti*, 326 F.3d at 1116; *Womack*, 497 F.3d at 1004. The claim is denied.

In "d" Trap asserts his attorney coerced him to plead guilty. For the same reasons described for "c," this claim is denied.

In "e" Trap obliquely complains that he did not receive a sentence of home confinement as predicted by his counsel. Since this claim relates only to counsel's alleged mishandling of the sentencing proceedings, and not the decision to accept the plea bargain, the claim is waived. *Pruitt*, 32 F.3d at 433. As a side note, at sentencing, Trap was actually offered a sentence of home confinement. Trap will need in depth medical care during his sentence. Consequently, the Court explored the possibility of allowing the Defendant to continue his medical care through a sentence of home confinement, conditioned upon his maintenance of private health insurance which would facilitate that care. Trap told the Court he was not sure he could commit to do that for a 57-month sentence.

In "f" Trap claims that his attorney told him that this Judge "owed him one." This claim for relief is meritless. Moreover, since this claim relates only to

counsel's alleged mishandling of the sentencing proceedings, and not the decision to accept the plea bargain, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "g" Trap claims that the plea deal was "a lie" because the prosecutor was opposing home confinement and "I just did not know how to go to the court and say I think my attorney has done nothing but lie to me the entire time." For the same reasons described for "c," this claim is denied. Moreover, since this claim relates only to counsel's alleged mishandling of the sentencing proceedings, and not the decision to accept the plea bargain, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "h" Trap claims that his attorney lied to him about the sentence he would receive. He claims his attorney told him he was looking at 18 to 30 months home confinement and restitution would be waived. As before, Trap offers no independent evidence to support his claims. The record evidence tells a different story. The plea agreement makes clear that sentencing is within the sole discretion of the judge. It states, "Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and **is not binding on the Court.**" *See* Plea Agreement at 8 (emphasis in original). During the plea colloquy, the Magistrate Judge reminded Trap, "[t]hose Guidelines will not bind the judge who sentences you. They're only advisory. The judge may impose the maximum penalties that have been described by counsel this morning. If the judge imposes a penalty greater than what you expected, you will still be bound by your guilty plea." The record is clear that Trap knew his attorney could not guarantee any sentence he might have predicted. Even so, Trap chose to plead guilty and waive his collateral attack rights. For the same reasons described for "c," this claim is denied. Moreover, since this claim relates only to counsel's alleged mishandling of the sentencing proceedings, and not the decision to accept the plea bargain, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "i" Trap claims his attorney lied to him about how the law applied to his

situation. For the same reasons described for "c," this claim is denied.

In "j" Trap complains that his attorney did not attend meetings with the prosecutor prior to signing the plea agreement, and did not attend the interview with the Probation Officer after he signed the plea agreement. The first claim, even if true, does not undermine the validity of the plea agreement. The second claim, even if true, is clearly waived.

In "k" Trap returns to the subject of the cooperation agreement which preceded his plea agreement. As in "a," in "k" Trap claims that on the day he signed the cooperation agreement his attorney was not present, spoke only over the phone, and did not discuss the document. This claim proves neither ineffective assistance nor prejudice from the entry of the plea agreement.

In "l" Trap again returns to the subject of the cooperation agreement which preceded his plea agreement. Trap suggests here that the government failed to keep its obligations under the cooperation agreement by continuing to charge him with more than one felony. Even if true, Trap could have gone to trial rather than later entering into the plea agreement. His counsel could have correctly concluded that entering the plea agreement was still the best course of action. This claim proves neither ineffective assistance nor prejudice.

In "m" Trap argues that his attorney "never conducted any discovery," but that he did hire and charge him for the cost of an investigator. There is no evidence Trap identifies that supports his claim. This claim proves neither ineffective assistance nor prejudice.

In "n" Trap repeats his assertion that his attorney did not investigate a defense, *i.e.*, he did not speak with the attorney that did work for the mortgage modification company. As before, there is no evidence Trap identifies that supports his claim. This claim proves neither ineffective assistance nor prejudice.

In "o" Trap repeats the assertion that his attorney did not investigate a defense and did not argue for a minor role reduction. As before, there is no evidence Trap

identifies that supports his claim. This claim proves neither ineffective assistance nor prejudice.

In "p" Trap asserts that his attorney did nothing to disagree with the findings in the pre-sentence report. Because this claim does not concern attorney performance leading to the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "q" Trap asserts that his attorney did nothing to disagree with the amount of restitution that the prosecution presented to the court. Because this claim does not concern his attorney's performance leading to the entry of the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433; *but cf. United States v. Tsosie*, 639 F.3d 1213, 1217 (9th Cir. 2011) ("[A] defendant cannot waive his right to *appeal* a restitution order if, at the time he agrees to waive *appeal*, he is not given a reasonably accurate estimate of the restitution order to which he is exposed.") (emphasis added).

In "r" Trap says that his attorney did not inform the Court about completing his course work for a Master of Arts degree, which could have been favorably considered during sentencing. (Actually, Trap mentioned this himself while reading a letter to the Court at the sentencing hearing.) Because this claim does not concern his attorney's performance leading to the entry of the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "s" Trap contends that his attorney failed to inform the Probation Officer or the court of the degree of his significant health complications occurring between the time of his plea and his sentencing. This led to his incarceration, Trap says, at a prison that is unable to care for his medical needs. Because this claim does not concern his attorney's performance leading to the entry of the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "t" Trap asserts that his attorney failed to object at sentencing when the Court denied his request for home confinement. Because this claim does not

concern his attorney's performance leading to the entry of the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433.

In "u" Trap notes that his attorney "allowed the judge" to order inappropriate restitution. Because this claim does not concern his attorney's performance leading to the entry of the plea agreement and the collateral attack waiver, the claim is waived. *Pruitt*, 32 F.3d at 433.

Claim "v" is omitted in the amended motion.

In "w" Trap objects that his attorney "allowed the prosecution" to include a waiver of appeal rights. He says he did not discuss it. He says there was no concession or consideration given. Strictly construed, the appeal waiver is a different matter not directly relevant to the collateral attack waiver. Even if one construes the claim liberally as a claim including the collateral attack waiver, Trap offers no other evidence to support his present objection. The record evidence tells a different story. For the same reasons described for "c," this claim is denied.

Finally, in "x" Trap claims that his attorney did not challenge a search warrant. The evidence uncovered was then "leveraged" by the government to obtain his guilty plea. Here, Trap fails to demonstrate how effective assistance of counsel would have achieved suppression of the evidence obtained from the search or how the suppression of evidence would have led to Trap's decision to go to trial, instead of pleading guilty. This claim is without merit.

For the reasons given above, Trap's claims of ineffective assistance of counsel challenging the knowing and voluntary nature of his guilty plea and waiver are without merit. The Court concludes Petitioner knowingly and voluntarily waived his statutory right to collaterally attack his conviction and sentence.

**IV. Remaining Claims**

Petitioner's remaining claims do not challenge the knowing and voluntary nature of his guilty plea and waiver but rather attack his conviction and sentence on other grounds. Because these claims are within the scope of Trap's valid waivers,

the Court will enforce the waivers barring these remaining claims.

## V. Miscellaneous Motions

The other miscellaneous motions, including a motion for court-appointed counsel, a motion for a subpoena for his former attorney's email records, and court-provided copies of various filings, is denied.

## VI. Certificate of Appealability

Under Federal Rule of Appellate Procedure 22(b), there is no appeal from the final order in a proceeding under § 2255 unless a "circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has failed to make such a showing. Accordingly, the Court denies Petitioner a certificate of appealability.

## CONCLUSION

For the reasons given above, the Court denies Petitioner's amended motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. The Court also denies Petitioner a certificate of appealability.

IT IS SO ORDERED.

DATED: June 3, 2013

Hon. Roger T. Benitez
United States District Judge